UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PETER A. GRANDPRE                                    CIVIL ACTION

VERSUS                                              NO: 22-1923

SHERIFF MARLIN GUSMAN, ET                           SECTION   "J" (4)
AL.

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

I.     **Factual Summary**

A.     **The Complaint**

The plaintiff, Peter A. Grandpre ("Grandpre"), a pre-trial detainee, filed suit against Sheriff Marlin Gusman, Warden Johnathan Griffin, Lt. Clemont Griffin, Deputy L. Johnson, Jr., Deputy R. Johnson, Deputy C. Clark, Deputy D. McDonald, Deputy M. Dozier, Deputy D. Cruse, Captain S. Carter, Sergeant L. Evans, Supervisor N. Howard, Medical Director Dr. Blake, Dr. Gray, R. Morgan, Captain M. Jones, Classification Deputies R. Price and Janelle M. Bazile, Sergeant S. House, Warden Tim Hooper, one (1) John Doe Deputy at Orleans Justice Center ("OJC"), five (5) John Doe Defendants at Louisiana State Prison ("LSP"), one (1) John Doe

1

Medical Director at LSP, one (1) John Doe Medical Supervisor at LSP, one (1) RN, LPN at OJC and eight (8) John Doe Defendants on the "Special Response Team" at OJC.

Grandpre is incarcerated in the Orleans Justice Center (formerly Orleans Parish Prison) at the time of the filing of this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983. The events Grandpre complains of began on July 2021 and continued through March 2022. Hurricane Ida approached southeast Louisiana during the beginning of this period and struck Southeast Louisiana on August 29, 2021.

### 1.    Excessive Force on August 28, 2021, and Inappropriate COVID-19 Protocol

As a preliminary matter, it appears that Grandpre's rendition of the events does not follow a cohesive timeline. Nevertheless, the Court addresses Grandpre's claims in the order that he presents them.

On August 28, 2021, Grandpre alleges that while he was housed on I-B Pod, he requested the opportunity to speak to a ranking officer and Deputy John Doe agreed to allow him to do so. Notably, this request was submitted during the period when, according to Grandpre, inmates were being evacuated to the Louisiana State Penitentiary because Hurricane Ida was approaching southeast Louisiana.

He alleges that he was then advised he could step out of his cell. Rec. Doc.1. According to Grandpre, he was not a vaccinated pretrial detainee and he wanted to be moved because of his risk of infection due to the presence of COVID-19 in the jail. *Id*. He alleges that on a day-to-day basis, inmates and deputies were infected with COVID-19. *Id*. He alleges that classification would just authorize inmates transferred to any pod location in a cell with another inmate making it impossible for you to quarantine or socially distance.

He alleges that COVID testing was not being conducted at that time and he was in an isolation cell number 19. *Id*. Grandpre complains that the classification department simply transferred inmates and placed them in a place which made it impossible to quarantine, social distance and without face masks. He alleges that no one knew who was sick because there was not testing. *Id*. However, he was told that he could not be released from quarantine without being retested. He was told that even if the test came back negative, that while he waited for the results, he could have tested positive due to the exposure in the jail.

Grandpre alleges that as the deputy got to the control center, another guard noticed that Grandpre was in the hall and instead of being allowed to speak about his problem, the door slammed. He alleges that while he was talking with two inmates in 1-A pod, the COVID-19 quarantine dorm, a "Special Response Team" ("SRT") in full body gear, with a protection shield, came through the pod door. He alleges that Deputy L. Johnson, Jr. was holding the left side of the shield and Deputy R. Johnson held the right side. He alleges that Deputy C. Clark, Deputy L. Johnson, Deputy D. McDonald, Deputy M. Dozier Deputy D. Cruse and Deputy John Doe slammed him into the A-pod Steel Door with the shield. He alleges that he was then slammed to the floor using unnecessary force.

Additionally, Grandpre references eight (8) John Doe deputies in the SRT at OJC for their failure to act, failure to intervene, and failure to report, which he alleges was deliberate indifference in violation of the Eighth Amendment.

He explains that Deputy L. Johnson was choking him with his hands around his neck with his head pressed to the ground, and his tactical knee gear pressed down on his mid-back. Additionally, he alleges that Johnson's left knee was putting pressure on his left shoulder.

Grandpre alleges that while Deputy L. Johnson was placing pressure on Grandpre's left shoulder, Deputy Doe took Grandpre's arms back to place handcuffs so tight that the bone of his wrist began to bleed. In addition to the handcuffs, Deputy Doe placed leg shackles on Grandpre's ankles backwards and so tight it caused his left ankle to swell and bruise for days. Grandpre alleges that all the S.R.T. deputies picked him up in the air and held him like he was in a coffin back to the elevator.

Grandpre alleges that he was removed off the tier, taken to the elevator where eight (8) unknown deputies watched but failed to intervene. He complains that while in the elevator, he was made to face the back wall and get on his knees, taken to medical where he sat on a bench for a nurse to check his vital signs but did not receive any medical treatment or examination. Grandpre alleges that while in medical, Deputy L. Johnson, continued to bend his wrists.

He was later returned to the elevator. Once they returned to the third floor, the eight deputies were still standing there and did nothing to intervene and was placed in 3-C pod in disciplinary lockdown.

Grandpre alleges that as he laid on his stomach, on the dirty floor, and in spite of the risk of COVID, his cuffs and shackles were removed, the deputies walked out and locked the cell door. He alleges that Lieutenant Griffin took Grandpre's sweatpants while Sgt. Evans, Lt. Picard, and Cpt. Carter were watching. After the encounter, Grandpre alleges that he requested the opportunity to meet with his lawyer because he did nothing that required the deputies to use the amount of force on him.

Grandpre alleges that during the entire event he never posed a threat of any kind, he never resisted in anyway and nor did he refuse any order because no order was ever given. He contends that he also requested the social worker and a nurse to get medical treatment. When the social worker arrived to assist him, he was on lockdown, which he claims was for no reason because he did not do anything. He alleges that he showed the social worker that he was bleeding from the wrist and was bruised up badly. He thereafter asked the social worker to call his attorney.

### 2.    Denial of Medical Care

Grandpre alleges that the nurse in the Orleans Justice Center Medical Department later arrived with Cpt. Carter, Sgt. Evans, and a deputy. *Id*. at 21. He alleges that he complained to the nurse about needing medical tests such as an x-ray for possible fractures of his ribs, mid-back, and both wrists because of the handcuffs and excessive force. *Id*. He alleges that he also complained of pain, yet the treatment he received was simply wound cleaning of his right wrist. *Id*. He alleges that the nurse denied him adequate medical care along with the other unidentified people who were there to assist her. *Id*.

### 3.    Denial of Due Process

Grandpre also alleges that at approximately 3:05 p.m., that same day while in lockdown, he requested his mail, legal materials, and hygiene items from the deputy who was going to store his belongings. He was told that he could not have any of his property and was left in an empty cell with nothing. He alleges that the deputy denied his request. Grandpre also alleges that this deputy never received a disciplinary write up.

### 4.    Hunger Strike for Medical Assistance

Next, Grandpre alleges that on August 27, 2021, he began a hunger strike to get medical attention and to see a social worker. He alleges that beginning that day, he refused his second tray of food. He alleges that while the deputy was aware of his desire for medical attention and indicated that he would notify medical, no one showed up. He alleges that he believed his wrists were fractured, and he sustained injuries to his left ankle and left shoulder, and a "bad bruise."

Additionally, on that same day he began the hunger strike, he waited hours to see his attorney. However, he alleges that he was told that morning that his attorney, Sierra Thompson, came to visit him but, no one ever came to take him to his attorney. Although he inquired, he was never told why he was not allowed to visit with his attorney.

Grandpre points out that later that same day, he refused his lunch tray. He alleges that despite his refusal to eat, no one from medical or the social worker came to see him.

He alleges that he asked Sgt. Evans about why (1) he was not taken to visit with his lawyer and (2) why no nurse and social worker came despite his request. He alleges that Sgt. Evans ignored him, and he therefore refused his tray. Thereafter, he alleges that he "called for rank" but no one came to see him.

He alleges that on the evening of that same day, at 7:15 p.m. shift change, Cpt. Steele was in the "pod" to check for possible Hurricane Ida evacuation. He alleges that Captain Steele had hygiene items sent to him and sandwiches. Grandpre alleges that despite his day of fasting, on the 28th, the next morning, he resumed eating breakfast. According to Grandpre, neither medical nor the social worker ever came. He complains that he was allowed to stay in an empty cell with a mattress and blanket, denied the ability to shower, but later provided a bar of soap.

6

### 5.    Hurricane Ida Evacuation

On August 28, 2021, Sheriff Gusman, his superiors and supervisory officials had Grandpre and the other inmates evacuated to the Louisiana State Penitentiary ("LSP") for Hurricane Ida. He complains that during the evacuation, they were evacuated without a mask mandate and social distancing. Grandpre alleges that his wrists were zip-tied over his injured wrist to another inmate, and they were transported by school bus.

He alleges that during the evacuation, they were not provided any sandwiches or water on the bus although it was lunchtime. He complains further that upon arrival at the Louisiana State Penitentiary ("LSP"), he along with the other prisoners were strip-searched. Grandpre alleges that after being searched, they were placed in the chapel with mattresses on the floor, not six feet apart, and with only a sheet and blanket. He complains that there were no hygiene items or clothing provided, and no food was provided until the next morning.

Hurricane Ida hit on August 29, 2021, and they were not allowed to shower until the day after the storm hit landfall. Grandpre acknowledges that on September 3, 2021, he and the other inmates were provided masks. He complains that at the time the masks were provided, inmates in the Chapel had COVID, and he was not provided a new jumpsuit during his stay at the State Penitentiary until September 4, 2021. It took several days for the "Well Path" medical personnel to provide any care to them because LSP did not provide any care and according to Grandpre, his injuries from the previous incident were causing pain and discomfort.

Next, Grandpre, complains that the chapel and bathroom at the state penitentiary were not properly cleaned, during their "ten days" stay – August 28 to September 6, 2021. On September 6, 2021, they were transported back to OJC and no COVID tests were done.

Grandpre alleges that after returning to OJC, he resumed his hunger strike again. He alleges he requested medical attention and completed a medical request form, but nothing happened. He complains that thereafter, he telephoned his family and his attorney who emailed the Warden and Well Path to request he get care, but nothing happened.

He complains that he continued to request medical care, but nothing happened so he refused breakfast the next day through September 8th, when he broke his hunger strike and ate lunch. He alleges that on that day, Captain Steele released him from lockdown and he was returned to general population. He complains that while he was returned to general population, classification placed him in a cell, without having him COVID tested, with an inmate he did not know. He alleges that he remained untested until October 4, 2021. He further alleges that Captain Steele was not cited with a disciplinary violation, nor was a disciplinary board hearing conducted for the incident.

On July 16, 2021, he was released from LSP and sent to OJC on a detainer. He told the nurse during intake that he needed an x-ray on his mid-back and that he was receiving physical therapy at LSP. He also told her he had chemical burns on his skin and needed medication for his eczema. He was put in 1-B pod for COVID quarantine.

On 1-B pod, he requested medical attention and x-rays through the kiosk. He saw Dr. Gray who denied his request for x-rays because Well Path did not have the funds to have him x-rayed. He was only tested one time in July 2021 for COVID. Other inmates were positive, and no additional testing was done. He became sick with COVID symptoms on July 28, 2021, and he alleges that the nurse refused to take his temperature.

The next day, a different nurse checked his temperature, and it was 99.7. The nurse did not report it to anyone. Plaintiff later lost his sense of taste and smell and continued to feel

poorly. Another nurse checked him and told him to drink a lot of water and stay hydrated. He called his family, and they ordered items from the commissary for him. He continued to try to break up his congestion, and his sense of taste and smell returned.

On September 5th, and 18th of 2021, he saw a nurse to provide an assessment of his injuries but never got to see a doctor. On October 11th, 18th, and November 1st, and 14th of 2021 he turned in another sick call request but never saw a doctor. On November 29, 2021, a nurse referred him for x-rays that were taken on November 30, 2021. He was told nothing was wrong. He therefore complains of the two-month delay for the medical unit to take an x-ray of his back.

He had another COVID test on December 17, 2021. On January 11, 2022, he filed a medical request and asked to see a doctor about his x-ray results taken on January 8th of his back. On January 12, 2022, the nurse said the only x-rays were of his wrist. He filed a grievance about his medical records.

On January 19, 2022, he saw the social worker and he arranged for Grandpre to see the doctor the next day. On January 21, 2022, he was moved to a cell #14 on 2-E pod with an unknown inmate and the cell was dirty. He was not provided cleaning supplies or a mask. On February 8th, a medical organization tested the whole pod for COVID 19, and the results received on February 11th showed three people tested positive. Those inmates were moved. The remaining inmates were never retested but Cpt. Jones got the inmates one disposable masks.

On February 20, 2022, plaintiff had diarrhea and he experienced difficulty breathing, coughing, sneezing, and spitting up mucus. On February 23, 2022, he filed a medical request form to be tested for COVID. Later that day, he was moved to 3-C pod for disciplinary and placed with an unknown inmate in a dirty cell. No one from medical ever checked on him. On

March 1, 2022, he alleges that he showed Deputy Cruse that he was spitting up mucus and Deputy Cruse allegedly told him that medical was supposed to test him, but he alleges that they did not have anyone qualified. On March 15, 2022, he filed a grievance complaint because he was never seen or tested. He alleges that he was left in the cell with no cleaning supplies. He was there for 34 days and only received one mask. He did not get tested until March 29, 2022. He did not provide any information regarding the results one way or the other.

He is suing defendants R. Johnson, L. Johnson, C. Clark, McDonald, Dozier, Cruse, and Deputy John Doe (1) for use of physical force without need or provocation and failing to intervene to prevent misuse of force; and (2) using physical force that amounted to assault and battery under Louisiana law. He requests compensatory damages for physical and emotional injuries in the amount of $375,000 from each jointly and severally.

He is suing defendant C. Griffin for failure to act and "curb the use of force" by the response team deputies, which he contends was deliberate indifference to his safety and contributed to the constitutional violations and assault and battery by the above deputies. He requests compensatory damages for physical and emotional injuries in the amount of $200,000.

He is suing defendants Cpt. Carter and Sgt. Evans for failure to act, intervene, and report his serious medical needs which constituted deliberate indifference under the Eighth Amendment. He requests compensatory damages for physical and emotional injuries in the amount of $100,000 from each jointly and severally.

He is suing defendants Howard, Dr. Blake, Dr. Gray, and Morgan for failure to take action, failure to respond to medical complaints, failure to insure he received adequate medical care, failure to provide timely COVID testing, failure to treat, failure to report classification for placing inmates without COVID testing, distancing, and without regard for COVID exposure,

failure to follow COVID protocols to assure plaintiff's safety, failure to follow medical protocol policies, failure to protect, and failure to act on his requests for medical care all of which amounted to deliberate indifference in violation of the Eighth Amendment. He requests compensatory damages for physical and emotional injuries in the amount of $325,000 from each jointly and severally.

He is suing Cpt. Jones and Sgt. House for failure to follow COVID-19 protocol requirements, failure to follow COVID policies to ensure plaintiff's safety, failure to report that the medical department was not following COVID testing after inmates tested positive, failure to report classification for housing inmates without COVID testing or distancing, failure to provide masks and follow mandatory mask and social distancing mandates which constituted deliberate indifference in violation of the Eighth Amendment. He requests compensatory damages for physical and emotional injuries in the amount of $150,000 from each jointly and severally.

He is suing Price and Bazile for failure to protect by deliberately housing him with an inmate positive for COVID-19, failure to house him alone to comply with social distancing, failure to follow COVID protocols and policies, failure to report violations of COVID policies which was deliberate indifference in violation of the Eighth Amendment. He requests compensatory damages for physical and emotional injuries in the amount of $250,000 from each jointly and severally.

He is suing L. Griffin for failure to take action against defendants L. Johnson, R. Johnson, C. Clark, McDonald, Dozier, Cruse, C. Griffin, and John Doe deputies to prevent misuse of force and assault and battery, failure to curb the pattern of misuse of force, failure to ensure he received medical treatment, failure to take action on his requests for medical

treatment, failure to respond to complaints, failure to follow policy guidelines, failure to enforce staff COVID protocol and policies to protect plaintiff, failure to report violations of the mask and social distancing mandates which was deliberate indifference in violation of the Eighth Amendment. He requests compensatory damages for physical and emotional injuries in the amount of $200,000.

He is suing Gusman for failure to take action against L. Johnson, R. Johnson, C. Clark McDonald, Dozier, Cruse and John Doe for assault and battery, failure to take action against Griffin for all of his failure to curb misuse of force, failure to respond to complaints, failure to take action against medical department and to get him medical care, failure to follow and enforce COVID protocols and policies, failure to protect, failure to provide safe, livable conditions, and failure to provide COVID testing which was deliberate indifference in violation of the Eighth Amendment. He requests compensatory damages for physical and emotional injuries in the amount of $300,000.

He is suing Hooper for failure to follow COVID protocols and policies, failure to provide safe, livable conditions, failure to provide medical care, failure to provide COVID testing, masks, and social distancing, failure to protect, failure to report violations of COVID policies and protocols, and failure to act which was intentional indifference in violation of the Eighth Amendment. He requests compensatory damages for physical and emotional injuries in the amount of $275,000 from each jointly and severally.

He is suing the John Doe LSP officers and the John Doe Medical Director and John Doe Medical Supervisor for failure to act, failure to report violations of COVID protocol and policies, failure to protect, failure to provide safe, livable conditions, failure to provide medical care, failure to provide COVID testing and follow protocols and policies which was intentional

indifference in violation of the Eighth Amendment.  He requests compensatory damages for physical and emotional injuries in the amount of $125,000 from each of the LSP officers jointly and severally and $325,000 from the medical director and supervisor jointly and severally. As other relief, he seeks punitive damages as follows:

(1)    $50,000 against Griffin, L. Johnson, R. Johnson, C. Clark, McDonald, Dozier, Cruse, J. Griffin, Sheriff Marlin Gusman, and Hooper.

(2)    $30,000 against Carter, Jones, Evans, House, Howard, Blake, Gray, Morgan, John Doe LSP officers, John Doe Medical Director, and John Doe Medical Supervisor.

(3)    $20,000 against the eight John Doe Deputies on the response team.

He also seeks a declaratory judgment stating that each of the foregoing claims constituted a violation of his Eighth Amendment rights and/or constituted assault and battery.  He also seeks an injunction ordering defendant Gusman, Howard, Blake, Gray, Morgan, Griffin, and/or their agents to:

(a)    immediately write a recommendation to the DA and the Orleans Criminal District Court that bail for unvaccinated inmates be reduced due to the capacity and conditions of OJC,

(b)    immediately arrange for plaintiff's physical therapy and other medical care for his mid-back, and

(c)    comply with medical care ordered for him.

## II.    <u>Standard of Review</u>

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2

F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28.  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

III.  <u>**Analysis**</u>

A.  **Sheriff Gusman, Captain Carter, Captain Jones, Sgt. Evans, Warden Johnathan Griffin and Sgt. House**

The plaintiff has named Sheriff Gusman, Captain Jones, Warden Johnathan Griffin, and Sgt. House for the events that arose out of the evacuation of the prison to the Louisiana State Penitentiary in advance of Hurricane Ida. He is suing Gusman for failure to act against L. Johnson, R. Johnson, C. Clark McDonald, Dozier, Cruse and the Deputy John Doe for assault and battery, failure to take action against Griffin for his failure to curb misuse of force, failure to respond to complaints, failure to take action against medical department and to get him medical care. He also seeks to sue Gusman. Captain. M Jones and Sgt House for failure to follow and

enforce COVID protocols and policies, failure to protect, failure to provide safe, livable conditions, and failure to provide COVID testing which was deliberate indifference in violation of the Eighth Amendment. He requests compensatory damages for physical and emotional injuries in the amount of $300,000 against Sheriff Gusman and $150,000 against Capt. Jones and Sgt. House each jointly and severally.

Grandpre seeks damages against Cpt. Carter and Sgt. Evans for their alleged failure to act, intervene and report his medical needs. He does not, however, provide any factual allegations to support the alleged failure to intervene. In the absence of any allegations, it appears that Captain Carter and Sgt. Evan are being sued because they are supervisory officials. According to Grandpre they should be held liable for their alleged deliberate indifference to his serious medical needs.

Under the broad reading afforded to a *pro se* complaints, the Court construes Grandpre's complaint as naming Sheriff Gusman as a defendant because of his supervisory role over the Orleans Justice Center. His complaint against Gusman alludes to the fact that Sheriff Gusman should be responsible for the alleged assault and battery, the excessive force he experienced, and all other problems he allegedly experienced during COVID-19. Grandpre alleges this includes the placement of inmates that were sick with COVID-19 near or not properly socially distanced from healthy inmates.

As to any claim against Sheriff Gusman in his official capacity, it is clear that "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir.1999). Accordingly, any official-capacity claim against Sheriff Gusman would, in reality, be a claim against the local governmental body itself. *Picard v. Gusman*, Civ. Action No. 12–1966, 2012

WL 6504772, at *4 (E.D. La. Nov. 26, 2012), *adopted*, 2012 WL 6504528 (E.D. La. Dec. 13, 2012); *Alexander v. City of Gretna*, Civ. Action No. 06–5405, 2010 WL 3791714, at *3 (E .D.La. Sept. 17, 2010); *Weatherspoon v. Normand*, Civ. Action No. 10–060, 2010 WL 724171, at *2–3 (E.D. La. Feb. 22, 2010). In the instant case, Plaintiff does not allege that his rights were violated as a result of a policy or custom or identified such a policy or custom. For that reason, it is clear that he has failed to state a proper official-capacity claim against Sheriff Gusman. Therefore, the official capacity claims against Gusman should be dismissed as frivolous.

Plaintiff likewise has not stated a proper individual-capacity claim against Sheriff Gusman. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." *Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir.2002) (citation omitted). Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Givens v. Orleans Parish Sheriff's Office,* 2015 WL 5971183 (E.D. La October 14, 2015). In this lawsuit, it is not alleged that Sheriff Gusman has had any personal involvement. Grandpre does allege that Gusman and his supervisors instituted an evacuation of the inmates for their safety. He complains, however, that during the evacuation his safety was not ensured, he had no clean clothing, additional masks or sanitation products. He further complains that there was no COVID-19 testing.

However, a supervisory official cannot be held liable pursuant to §1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor

may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

Grandpre's complaint fails because there is no suggestion that Sheriff Gusman, Warden Johnathan Griffin, Captain Carter, Sgt. Evans, Captain Jones, or Sgt. House were personally involved in the deprivation of his constitutional rights. Grandpre's complaint further does not allege a causal connection between an act by Sheriff Gusman, Captain Carter, Warden Johnathan Griffin or Sgt. Evans and the alleged constitutional violations. Further, to the extent that Grandpre only had one mask and sanitation products were not provided, he does not allege that he was harmed or that the harm was caused by Gusman, Griffin, Carter or Evans personally. Additionally, he does not allege that he reported any medical problem to Sheriff Gusman, Warden Johnathan Griffin Captain Carter or Sgt Evans. Therefore, the claim against Gusman, Captain Carter, Warden Johnathan Griffin and Sgt. L. Evans, Captain Jones and Sgt. House fails to state a claim for which relief may be granted.

### B.    Medical Indifference Claims

Grandpre alleges that after he was taken down by the prison guards because he was in the hallway, he sustained injuries due to their excessive force. He alleges that when the nurse arrived, he advised her that he needed to see a doctor for x-rays of his ribs, mid-back and both wrists because of the tightness of the handcuffs. He also alleges that he complained of pain. The nurse according to Grandpre, cleaned his wound on his right wrist. Because of his dissatisfaction with the medical care, he went on a "hunger strike" for a day in an attempt to get additional care because he was in pain.

Grandpre alleges that even when they were evacuated due to Hurricane Ida, the nurse did not provide him with medical care and yet he acknowledges that he instructed the deputy to bring Grandpre medication. He alleges that Dr. Gray denied his request for x-rays of his back. He also complains about having COVID symptoms but not being tested for COVID in a timely manner; he was tested on March 29, 2022, for COVID. Grandpre also alleges that the medical department supervisory staff, including the classification supervisory officials, knew that inmates had COVID because of the test results, the fact that these inmates were placed in quarantine, and the classification of the inmates.

Grandpre further alleges that from August 28, 2021 until September 6, 2021, he was not able to receive any adequate medical treatment at all. He alleges that during the COVID evacuation, he should have been able to receive medical treatment from the excessive force incident in the form of x-rays.

He therefore has sued N. Howard, Supervisor of the Medical Department; Dr. Blake, Medical Director of OJC; Dr. Gray, LPN "Doctor" at OJC; and R. Morgan employed as DON of the Medical Department for their alleged failure to act, failure to respond to medical complaints, failure to insure he received adequate medical care, failure to provide timely COVID testing, failure to treat, and failure to report classification for placing inmates without COVID-19 testing. According to Grandpre, these defendants should be held liable for failing to follow COVID protocols to assure plaintiff's safety, failure to follow medical protocol policies, failure to protect, and failure to act on Grandpre's requests for medical care.  Grandpre alleges that the totality of the defendants' failures amount to deliberate indifference in violation of the Eighth Amendment. He seeks to recover compensatory damages for physical and emotional injuries of $325,000 each jointly and severally.

The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983"). *See Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In addition, the mere delay alone in receiving medical treatment is usually not sufficient to state a claim under § 1983. *Mendoza*, 989 F.2d at 195; *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simmons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of the delay, the plaintiff at a minimum must show deliberate indifference to a serious

medical need to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294 (1991); *see also Estelle,* 429 U.S. at 104-05.

Grandpre alleges that he was dissatisfied with the treatment provided by the nurse and doctors after his encounter with prison officials, because he was in pain as a result of experiencing excessive force. He complained that he had back and wrist pain, yet the nurse only cleaned his wrist. Grandpre alleges that he believed that both his wrists were fractured, his left ankle was sore, and his left shoulder rotator was in pain along with the presence of a brush burn. Rec. Doc. 1, p. 24.

Yet, Grandpre acknowledges that Well Path was able to give him medication and provide wound care even though the care was delayed during the evacuation. Rec. Doc. 1, p. 28. Grandpre also points out that he did see the nurse for wound care and was advised that he should let the brush burn on his right knee heal and his right wrist heal. He also contends that he never got tested for COVID-19 in direct contravention of his earlier allegation and later acknowledges that he received COVID-19 tests on July 2021[1], October 4, 2021[2], December 17, 2021[3], February 8, 2022[4,] and on March 29, 2022[5.]

The through line of Grandpre's allegations is that he received treatment, but he disagreed either with the timing or the type of treatment he received. He does not allege that there was an intentional deprivation of treatment for him. He alleges that all the nurse wanted to do was to clean his bloody wound on his right wrist. While he alleges that he thought his wrist was broken, and there was an x-ray of the wrists, he does not allege that a fracture was confirmed by the

---

1 Rec. Doc. p. 39.
2 Rec. Doc. p. 37.
3 Rec. Doc. p. 43.
4 Rec. Doc. p. 44.

x-ray. He alleges that his wrists were bruised, swollen and cut which he showed to the nurse. Rec. Doc. 1 p. 24. He also complained that his rotator was hurting, and he advised Nurse John Doe. *Id*. at 29.  However, he does not allege that after the initial complaint and visit with the nurse that his rotator continued to bother him. In fact, Grandpre did not, according to his complaint, believe that he needed an x-ray of his rotator. *See* Rec. Doc. 1, p. 20. His wrists and back were both x-rayed albeit not at the speed that Grandpre wanted.[6]

Grandpre acknowledges that he received physical therapy treatment while he was in Angola. R. Doc. 1, p. 38.  He contends that Dr. Gray denied his request for x-rays because they were expensive. *Id*. at 38. However, Nurse John Doe referred him for x-rays on November 29, 2021, and they were taken of his mid back on November 30, 2021. *Id*. at 42. He saw the doctor for his back x-ray on January 20, 2022.[7]

Additionally, he alleges that he was exposed to COVID and had symptoms of COVID. However, he received COVID-19 tests on five separate occasions. Yet, he alleges that he did not receive COVID-19 tests. Also, presumably, the results of each of the test must have been negative because in his 71-page complaint, he never states that due to the lack of safety protocols that he actually tested positive on one of the COVID-19 tests.

 Furthermore, delay in treatment, however, does not constitute deliberate indifference. *Mendoza*, 989 F.2d at 195. The claims of Grandpre regarding his evacuation and return to OJC do not state a claim for which relief may be granted. Even if he contracted COVID during the pandemic, his complaint confirms that he received COVID testing and medical instructions which he disagreed with, but ultimately his illness resolved. Additionally, during the pandemic,

---

5 Rec. Doc. p. 47.
6 Rec. Doc. p. 43.

he confirms that he was tested for COVID-19 on multiple occasions. Therefore, the claims against N. Howard; Supervisor of the Medical Department; Dr. Blake, Medical Director of OJC; Dr. Gray, LPN "Doctor" at OJC; and R. Morgan employed as DON of the Medical Department is frivolous for failing to state a claim for which relief may be granted.

### C.    Excessive Force Claim

Grandpre seeks damages for R. Johnson, L. Johnson, Jr., C. Clark, McDonald, Dozier, Cruse and John Doe use of physical force without need or provocation and failing to intervene to prevent misuse of force. According to Grandpre, he was standing outside of the door of 1-A pod when he noticed that there was a "special response team" ( S.R.T) outside of the main inner lock door. Grandpre alleges that the S.R.T. team was dressed in full body gear, with a protection shield waiting to come through the door. Grandpre contends he "did not think anything about it" and as he tried stepping to the side, they actually came to him with "mad force." He describes the "mad force" as a drill for military training, and slammed the shield into his body, making the side of his ribs slam into the steel door.

Grandpre alleges that he was then slammed to the floor using unnecessary force. He claims that once he was on the floor deputy L. Johnson, Jr. was choking him with his hands around his neck. He alleges that L. Johnson, Jr. also pressed his head down to the floor with force, putting pressure on his left knee and left shoulder.

He alleges that Deputy John Doe placed leg shackles backwards causing a "max lock" around his ankle bone. Grandpre contends that the shackles were so tight that he could not walk because of the pain, which left his ankle swollen and bruised for days.

---

7 Rec. Doc. p. 44.

As to Deputy C. Clark, he alleges that he was behind L. Johnson Jr. along with Deputy M. Dozier behind him. He alleges that Deputy D. McDonald was behind R. Johnson along with Deputy D. Cruise behind him and John Doe.

He further seeks to allege that the use of physical force amounted to assault and battery under Louisiana Law. He seeks compensatory damages for physical and emotional injuries in the amount of $375,000 from each jointly and severally.

To the extent that plaintiff is claiming that the defendants used excessive force against him, that claim likewise implicates the Eighth Amendment's prohibition against cruel and unusual punishments. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992) (quotation marks omitted). Regarding such claims, the United States Fifth Circuit Court of Appeals has explained:

Several factors are relevant in the inquiry whether unnecessary and wanton infliction of pain was used in violation of a prisoner's eighth amendment right to be free from cruel and unusual punishment. The factors include:

1. The extent of the injury suffered; 2. The need for the application of force; 3. The relationship between the need and the amount of force used; 4. The threat reasonably perceived by the responsible officials; and 5. Any efforts made to temper the severity of a forceful response.

*Hudson*, 962 F.2d at 523. "Of course, these identified factors are not exclusive; each case must be judged on its own facts." *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). Nevertheless,

a court is to consider each of the Hudson factors in its analysis of an excessive force claim. *See Jones v. Primrose*, 176 F. App'x 518, 519 (5th Cir. 2006).

The extent of the injury suffered is the first factor. "The absence of serious injury is quite relevant to an excessive force inquiry but does not alone preclude relief." *Baldwin,* 137 F.3d at 839. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. *Hudson,* 503 U.S. at 9 (citation omitted). This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry.

The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (internal citations, quotation marks, and brackets omitted). In summary, "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 38.

He alleges that defendants L. Johnson, Jr., R. Johnson C. Clark, McDonald, Dozier, Cruse, and John Doe Deputy slammed him into the A-pod steel door with the shield. He alleges that L. Johnson, Jr., choked him and pressed his head to the ground, and with his tactical knee gear pressed down on his mid-back. Grandpre alleges that L. Johnson, Jr., put pressure on his left shoulder, and a John Doe Deputy bent his arm back to cuff him, tightening the cuffs and causing his wrist to bleed. He alleges that the John Doe deputy also placed his leg shackles on his ankles

wrong and so tight that it caused his left ankle to swell and bruise for days. As a result of this incident, he complains that he sustained injury to his back, shoulder, and wrists. He also contends that the force was not necessary and excessive such that it violated his rights.

In connection with this court's statutory duty, the Court finds that the excessive force claim states a claim for which relief may be granted. The claims against L. Johnson, Jr., R. Johnson, C. Clark, McDonald, Dozier, Cruse, and John Doe Deputy shall proceed forward.

### D.    Bystander Liability

Grandpre also alleges that Sgt. L Evans, Lt. Clemont Griffin, and Captain Carter were watching him be carried to 3-C-pod after his take down. They also allegedly were watching his cuffs and shackles be removed.

An officer may be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631 (5th Cir 2013); *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir.2002) (footnote omitted); see, e.g., *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir.2009); *Smith v. Mensinger,* 293 F.3d 641, 650–51 (3d Cir.2002); *see also Nowell v. Acadian Ambulance Serv.*, 147 F.Supp.2d 495, 507 (W.D.La.2001). However, liability will not attach where an officer is not present at the scene of the constitutional violation. See *Snyder v. Trepagnier*, 142 F.3d 791, 801 n. 11 (5th Cir.1998) see also *Gilbert v. French*, 364 Fed.Appx. 76, 83 (5th Cir.2010) (per curiam) (unpublished); *Ibarra v. Harris Cnty. Tex.*, 243 Fed.Appx. 830, 835 & n. 8 (5th Cir.2007) (per curiam) (unpublished) ("A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force.").

Grandpre claim that Sgt. L. Evans, Lt. Clemont Griffin and Captain Carter were bystanders fail to state a claim for which relief may be granted. First, there is no way Evans Picard or Carter could have known that Grandpre's constitutional rights were violated because he was being carried and placed in C-3Pod. Second, based on what these defendants saw as alleged by Grandpre, there is no suggestion that a harm could have been observed. Likewise, there was nothing for these defendants to action against. Therefore, the claims against Sgt. Evans, Lt. Clemont Griffin, and Captain Carter should be dismissed for failure to state a claim for which relief may be granted.

### E.    Conditions of Confinement: Failure to Protect from COVID

Grandpre seeks to allege that R. Price; Janelle M. Bazile; Tim Hooper; M. Jones; Sgt. House; (5) John Doe ranking officers at LSP; John Doe, Medical Supervisor at LSP; and John Doe, Medical Director at LSP for failure to protect by deliberately housing him with an inmate who positive for COVID-19. He seeks to allege that these defendants failed to house the other inmate alone to facilitate social distancing, failed to follow COVID-19 Protocols and polices. He also alleges that these defendants failed to report violation of COVID-19 policy which according to Grandpre was deliberately indifferent in violation of the Eighth Amendment.

He complains that while he was evacuated to the Louisiana State Prison (LSP), he and other inmates were transported to a non-livable oratory Chapel on the state prison's campus by (4) Four John Doe Ranking Officers of Louisiana State Prison. *Id*. at 27. He alleges that there were multiple mattresses all over the floor with only a sheet and blanket, no hygiene or clothing was provided. He alleges that none of the mattresses were six (6) feet apart to allow for social distancing. He complains that while at the state prison they did not get food until August 29, 2021, and he was not allowed to shower until August 30, 2021. He also complained that while

there, COVID-19 positive inmates were housed in the chapel with non-COVID-19 inmates. He also asserts a long list of complaints about the condition of his confinement while at the state prison.

The Eighth Amendment's prohibition on "cruel and unusual punishments" applies to both convicted and pretrial inmates through the Fourteenth Amendment's Due Process Clause and forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' ... or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted); *Farmer v. Brennan,* 511 U.S. 825, 832, 837 (1994). "The Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care." *Reed v. Krajca (Estate of Henson)*, 440 F. App'x 341, 343 (5th Cir. 2011).

To recover for conditions resulting from policies intentionally, whether actual or presumed, creating unconstitutional conditions, the plaintiff must allege that the conditions complained of were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." *Hare v. City of Corinth, Miss,* 74 F.3d 633 (5th Cir. 1996) Though not expressly, "[t]he Fifth Circuit has at least suggested that condition-of-confinement claims are cognizable against individual actors only in their official capacities." *Id.*

During the COVID-19 pandemic, courts have remained mindful that "[a] detention facility's protocols for isolating individuals, controlling the movement of its staff and detainees, and providing medical care are part and parcel of the conditions in which the facility maintains

custody over detainees." *Sacal-Micha v. Longoria*, 449 F. Supp. 3d 656, 663 (S.D. Tex. 2020). "[T]he incidence of diseases or infections, standing alone, [cannot] imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks." *Shepherd v. Dallas Cnty.*, 591 F.3d 445,452 (5th Cir. 2009) "Rather, a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights." *Id.* This requires a showing that either "serious injury and death [a]re the inevitable results of the [institution's] gross inattention to the needs of inmates with chronic illness," or that a specific rule or policy "caused ... extreme suffering or resulted in adverse medical outcomes serious enough to establish a constitutional violation." *Id.*

Assuming there was a policy violation by not social distancing, Grandpre has made no allegation that serious injury and death was the inevitable result, or that that there was a resulting adverse medical outcome serious enough to establish a constitutional violation either while housed at LSP or OJC. Further, the Eighth Amendment does not mandate perfect or successful implementation of prison policy. *Lewis v. Casey,* 518 U.S. 343, 363 (1996) (citing *Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019)).  The failure to follow a policy alone without intent to cause harm does not state a claim for which relief may be granted. *Young v. Ledet,* 2021 WL 799683 (E.D. La. 2021). Therefore, Grandpre's claim against R. Price; Janelle M. Bazile; Tim Hooper; M. Jones; Sgt. House; (5) John Doe ranking officers at LSP; John Doe, Medical Supervisor at LSP; and John Doe, Medical Director at LSP fail to state a claim for the conditions of his confinement

### F.    State Law Claims

He also seeks to assert a claim against Lt. Clemont Griffin for his failure to curb the misuse of force from the Special Response Team (S.R.T.) and proximately cause the assault and battery. While Grandpre generally asserted a claim of negligence in the complaint, he does not in the body of the complaint assert a claim for negligence.

Under Louisiana law, the torts of assault and battery, when raised against a law enforcement officer acting in the course of employment, require a showing that the law enforcement officer acted with unreasonable or excessive force." *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 515 (M.D. La. 2013) (citing *Gerard v. Parish of Jefferson*, 424 So. 2d 440, 444 (La. App. 5 Cir. 1982)). "Under Louisiana law, a battery is defined as an intentional harmful or offensive contact with a person." *Fontenot v. Gusman,* 2012 WL 5196426, at *16 (E.D. La. Oct. 18, 2012) (citing *Doss v. Morris*, 86 Fed. App'x. 25, 27–28 (5th Cir. 2004)). The plaintiff must allege that the person accused of battery "intended to inflict an offensive contact without the plaintiff's consent." *Id*.

"Assault is the imminent threat of a battery." *Doss*, 86 F. App'x at 28. The plaintiff must allege that they were placed in "reasonable apprehension of harmful or offensive contact." *Fontenot*, 2012 WL 5196426 at 17. Corrections officers cannot be held liable for use of force, unless that force is excessive. *Id*. "Under Louisiana law, the same standard is used in analyzing a state law claim of excessive force as a federal constitutional claim—reasonableness under the circumstances." *Escort v. Miles*, 2018 WL 3580656, at *8 (W. D. La. July 25, 2018) Louisiana's state law qualified immunity is "[i]dentical to the federal standard...." *See Perrilloux v. City of Kenner,* 2009 WL 10680057, at 3 (E.D. La. Oct. 9, 2009). Therefore, the state law claims against Lt. C. Griffin fails to a state a claim for which relief may be granted.

IV.    <u>**Recommendation**</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that the § 1983 claims filed by the plaintiffs, Peter A. Grandpre be **DISMISSED IN PART** as frivolous pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e as follows:

**IT IS FURTHER RECOMMENDED THAT** the claims against Sheriff Marlin Gusman, Warden Johnathan Griffin, Lt. Clemont Griffin, Captain S. Carter, Sergeant L. Evans, Supervisor N. Howard, Medical Director Dr. Blake, Dr. Gray, R. Morgan, Captain M. Jones, Classification Deputies R. Price and Janelle M. Bazile, Sergeant S. House, Warden Tim Hooper, five (5) John Doe Defendants at Louisiana State Prison ("LSP"), one (1) John Doe Medical Director at LSP, one (1) John Doe Medical Supervisor at LSP, one (1) LPN, RN at OJC and eight (8) John Doe Defendants on the "Special Response Team" at OJC be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Peter A. Grandpre's state law claims of negligence and assault and battery be **DISMISSED PREJUDICE** for failure to state a claim for which relief may be granted.

**IT IS FURTHER RECOMMENDED THAT** Peter Grandpre's claims of excessive force against R. Johnson, L. Johnson, Jr., C. Clark, McDonald, Dozier, Cruse and Deputy John Doe at OJC adequately states a claim for relief and therefore shall be allowed to proceed forward.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

      New Orleans, Louisiana, this _____27th_____ day of _____March_____, 2023.


                                    _____

                                      **KAREN WELLS ROBY**
                         **UNITED STATES MAGISTRATE JUDGE**