UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PETER A. GRANDPRE** | **CIVIL ACTION** |
| **VERSUS** | **NO:  22-1923** |
| **MARLIN GUSMAN, ET AL.** | **SECTION: "J" (4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss Pursuant to 12(b)(6) (R. Doc. 14)** filed by Defendants, R. Johnson, L. Johnson, Jr., Deputy C. Clark, D McDonald, Deputy Dozier, and Deputy Cruse, (collectively "Defendants") at Orleans Justice Center ("OJC"). This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to Title 28 U.S.C. §§ 636(b)(1)(B)-(C), 1915e(2), and 1915A; and, as applicable, 42 U.S.C. § 1997e(c)(1) and (2). The motion is unopposed.

**I.     Factual Summary**

The Plaintiff, Peter A. Grandpre ("Grandpre"), an inmate at Orleans Justice Center, filed this instant pro se and in forma pauperis complaint pursuant to 42 U.S.C. § 1983 against Orleans Parish Justice Center, Sheriff Marlin Gusman, Deputy L. Johnson, Deputy C. Clark, Deputy Dozier, Deputy D. McDonald, Deputy Cruse, Captain S. Carter, Sergeant L. Evans, Medical Department Supervisor N. Howard, Medical Director Dr. Blake, Dr. Gray, LPN; R. Morgan, Captain M. Jones, Classification Officers R. Price and Janell M. Bazile, Sergeant S. House, Warden Tim Hooper; one (1) John Doe Deputy at OJC; eight (8) John Doe members of the Special Response Team at OJC; one (1) John Doe Medical Supervisor at Louisiana State Penitentiary; one (1) John Doe Medical Director at Louisiana State Penitentiary; one (1) John Doe, LPN; and five Louisiana State Penitentiary members, Colonel, Lieutenant Colonel, Major Captain, and

Lieutenant. R. Doc. 1. On March 27, 2023, the undersigned magistrate judge issued a Report and Recommendation dismissing all claims except those against R. Johnson, L. Johnson, Jr., Deputy C. Clark, D. McDonald, Deputy Dozier, Deputy Cruse, and Deputy John Doe at OJC. R. Doc. 5.

Grandpre alleges that on August 28, 2021, while he was housed on I-B Pod, he requested the opportunity to speak to a ranking officer and Deputy John Doe agreed to allow him to do so. R. Doc. 1 at 12. Notably, this request was submitted during the period when, according to Grandpre, inmates were being evacuated to the Louisiana State Penitentiary because Hurricane Ida was approaching southeast Louisiana. *Id.* Grandpre alleges he was then advised that he could step out of his cell. *Id.* According to Grandpre, he was not a vaccinated pretrial detainee and he wanted to be moved because of his risk of infection due to the presence of COVID-19 in the jail. *Id.* He alleges that on a day-to-day basis, inmates and deputies were infected with COVID-19. *Id.* He alleges that classification would authorize inmates transferred to any pod location in a cell with another inmate making it impossible to quarantine or socially distance. *Id.*

Grandpre alleges that as the deputy got to the control center, another guard noticed that Grandpre was in the hall and instead of being allowed to speak about his problem, the door slammed. *Id.* at 13. He alleges that while he was talking with two inmates in 1-A pod, the COVID-19 quarantine dorm, a "Special Response Team" ("SRT") in full body gear, with a protection shield, came through the pod door. *Id.* at 14. Grandpre alleges that Deputy L. Johnson, Jr. was holding the left side of the shield and Deputy R. Johnson held the right side. *Id.* at 15. He alleges that Deputy C. Clark, Deputy L. Johnson, Deputy D. McDonald, Deputy M. Dozier, Deputy D. Cruse, and Deputy John Doe slammed him into the A-Pod steel door with the shield. *Id.* Grandpre alleges that he was then slammed to the floor using unnecessary force.

Grandpre explained that Deputy L. Johnson was choking him with his hands around his neck with his head pressed to the ground, and his tactical knee gear pressed down on his mid-back. *Id.* at 16. Additionally, he alleges that Johnson's left knee was putting pressure on his left shoulder. *Id.* Grandpre alleges that while Deputy L. Johnson was placing pressure on Grandpre's left shoulder, Deputy Doe took Grandpre's arms back to place handcuffs so tight that the bone of his wrist began to bleed. *Id.* In addition to the handcuffs, Deputy Doe placed leg shackles on Grandpre's ankles backwards and so tight it caused his left ankle to swell and bruise for days. *Id.* Grandpre alleges that all the SRT deputies picked him up in the air and held him like he was in a coffin back to the elevator. *Id.* at 17.

Grandpre alleges that he was removed off the tier, taken to the elevator where eight (8) unknown deputies watched but failed to intervene. *Id.* He complains that while in the elevator, he was made to face the back wall and get on his knees, taken to medical where he sat on a bench for a nurse to check his vital signs but did not receive any medical treatment or examination. *Id.* Grandpre alleges that while in medical, Deputy L. Johnson, continued to bend his wrists. *Id.* at 17-18.

Defendants contend that when filing his complaint, Grandpre acknowledged that OJC has a grievance procedure and to his use of that procedure. R. Doc. 14-1 at 2. Defendants contend that Grandpre was required to attach all administrative complaints he lodged to the lawsuit as well as the prison's responses and Grandpre attached two grievances. *Id.* & n.3. The Defendants contend Grandpre failed to attach any Step 2 grievance appeal process documents and he therefore failed to exhaust his available administrative remedies. *Id.* at 3.

**II.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). On a Rule 12(b)(6) motion, a court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *See Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court's task, then, is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Doe ex rel. Magee*, 675 F.3d 849, 854 (5th Cir. 2012). Moreover, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

**III.   Analysis**

Defendants contend that Grandpre's claim is not properly before the Court because he failed to exhaust the available administrative remedies under the Prison Litigation Reform Act ("PLRA"). Therefore, Defendants contend that the claims against them should be dismissed.

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process before filing an action in federal court. *Jones v. Bock*, 549 U.S. 199, 219 (2007); *Woodford v. Ngo*, 548 U.S. 81, 85, 98-95 (2006); *Burns v. Eaton*, 752 F.3d 1136, 1141-42 (8th Cir. 2014). "[T]he PLRA's exhaustion

requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *Id.* Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id.*

The prisoner grievance system in Louisiana's prisons is "available" for purposes of the 42 U.S.C. §1997e(a) exhaustion requirement. *Ferrington v. La. Department of Corrections*, 315 F.3d 529, 531-32 (5th Cir. 2002). Louisiana's prisoner grievance system is codified in the Corrections Administrative Remedy Procedure (CARP), La. R.S. 15:1171, et seq., and in DPSC's administrative regulations. *See* La. Admin. Code tit. 22 § 325. The Administrative Remedy Procedure ("ARP") process that was supposed to be used before the Plaintiff filed this suit is initiated by the inmate writing a letter to the warden, in which he briefly states the basis of the claims and the desired relief. La. Admin. Code tit. 22 § I-325(G).

The offender commences the process by completing a request for administrative remedy or writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought. For purposes of this process, a letter is:

> (a) any form of written communication which contains the phrase: "This is a request for administrative remedy" or "ARP", or
> (b) request for administrative remedy at those institutions that which to furnish forms for commencement of this process.

La. Admin. Code tit. 22 § I-325(G)(1). This grievance is known as an "ARP." The ARP must be filed with the warden within ninety (90) days of the alleged incident. *Id.* The warden of the

institution shall respond to the inmate within forty (40) days from the date the request is received, which concludes the **first step** of the administrative process.  *See id.* § I-325(J)(1)(a).

If the inmate is dissatisfied with the outcome of this first step, then he may appeal to the secretary of the Department of Public Safety and Corrections by indicating that he is not satisfied in the appropriate space on the response form and forwarding his dissatisfaction to the ARP screening officer within 5 days of receipt of the decision.  *Id.* § I-325(J)(1)(b).  This second step is concluded when a final decision is made by the secretary and the inmate is notified within 45 days of receipt. La. R.S. 15:1172(C).

After the completion of both steps, and each element thereof, may the inmate file suit in district court.  *Woodford*, 548 U.S. at 84.  Furthermore, if the prisoner fails to initiate the grievance process or fails to proceed to the second step of the procedure, he has abandoned his claims and any subsequent suit should be dismissed with prejudice.  La. R.S. 15:1172(C); *see also Johnson v. Louisiana ex rel. Louisiana Dep't of Pub. Safety & Corr.*, 468 F.3d 278, 281 (5th Cir. 2006).

In this case, Grandpre claimed that incident occurred on August 26, 2021, but he did not sign his grievance form until January 11, 2022.  R. Doc. 1-1 at 16.  The statute, however, requires that Grandpre initiate an administrative remedies grievance within 90 days of the date of injury or damage.  La. R.S. 15:1172 (B)(1).  The record shows that Grandpre initiated his administrative request for review on January 11, 2022.  However, Grandpre was required to initiate his complaint no later than November 24, 2021.  Grandpre's administrative claim was untimely, and he therefore abandoned these claims.

IV.  **Recommendation**

It is therefore **RECOMMENDED** that the **Motion to Dismiss Pursuant to 12(b)(6) (R. Doc. 14)** be **GRANTED** and Peter A. Grandpre's § 1983 complaint against R. Johnson, L.

Johnson, Jr., Deputy C. Clark, D. McDonald, Deputy Dozier, and Deputy Cruse be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted.

The Court notes there is an OJC John Doe who is not covered by this Motion.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 16th day of October 2023.

                                            **KAREN WELLS ROBY**
                              **UNITED STATES MAGISTRATE JUDGE**